WEBB, Respondent, vs. CITY OF BELOIT, Appellant.

*September 13—October 11, 1938.*

Clarence L. Haugen, city attorney, and E. J. Caskey, assistant city attorney, for the appellant.

For the respondent there was a brief by Adams & Adams of Beloit, and oral argument by H. W. Adams and Allan W. Adams.

FRITZ, J.  Plaintiff became a member of the Beloit police force January 1, 1931.  Defendant is a city of the third class and since April 6, 1929, has operated under the city-manager plan as authorized by ch. 64, Stats.  When the city-manager plan was adopted, the city had a board of fire and police commissioners operating under sec. 62.13, Stats. This board was abolished on November 4, 1929, the pertinent provisions of the ordinance reading:

"The fire and police commission is hereby abolished and the powers and duties thereof assigned to the city manager."

The board was not reorganized until July 19, 1933, the reorganization being in conformity to ch. 263, Laws of 1933, which amended sec. 64.10 (2), Stats., to require the organization within thirty days after June 20, 1933, of fire and police commissioners in the city-manager cities which had theretofore abolished such boards.  Before reorganization of the fire and police commission, and while the ordinance abolishing this commission was in effect, the city council on December 19, 1932, because of the financial condition of the

city, passed a resolution reducing the salaries of the policemen and firemen fifteen per cent from the 1930 schedule. Checks were issued in accordance with this resolution beginning January 1, 1933, on the basis of the fifteen per cent reduction. On May 1, 1933, the council passed a second resolution further reducing the salaries after that date. Thereafter, the city manager issued checks on the basis of the new resolution. Subsequently, certain increases were made in the salaries but these are immaterial here.

The trial court concluded that the resolutions in question were ineffective because not founded upon a recommendation by the city manager and that the manager, by operation of the ordinance abolishing the fire and police commission and vesting its powers and duties with him, became vested with the power of recommendation as to decreases referred to in sec. 62.13 (7), Stats. This section vests the power of fixing salaries in the council but provides that such salaries when fixed may not be decreased without a previous recommendation of the board of fire and police commissioners. The trial court further found that the salary reductions were made without actual recommendation of the city manager, and that plaintiff did not acquiesce in these deductions or waive his rights to attack their validity, and that he was not estopped to claim the amount withheld. Defendant claims that the trial court erred in all these respects, and its first contention is that the city of Beloit, following its reorganization and adoption of the city-manager plan, was not subject to the provisions of sec. 62.13 (7), and might reduce the salaries of its policemen and firemen without recommendation by the city manager. No question is raised of the authority of the city council to abolish the police and fire commission. Authority for this is found in sec. 64.10 (2), which provides:

"All administrative boards and commissions existing in such city prior to its reorganization shall continue to exist

after its reorganization under this chapter until abolished, altered, or reorganized by ordinance of the council. The council shall have power upon the report and recommendation of the city manager to alter, reorganize or abolish by ordinance any administrative board or commission with the exception of the board of education." (Sec. 64.10 (2), Stats. 1929.)

The question is whether, upon the abolition of the board of police and fire commissioners and the assignment of their powers and duties to the city manager, the latter acquired the power to recommend to the council decreases in the existing salaries of policemen and firemen, and whether the exercise of this power was necessary before decreases could be voted by the council. Defendant's contention is that the power of recommendation vested in the police and fire commission under sec. 62.13 (7), Stats., is legislative in character and is therefore not capable of being assigned to the city manager, it being the purpose of ch. 64, Stats., completely to separate the administrative powers from legislative powers, and to assign only administrative powers to the city manager.

It is the contention of plaintiff that it cannot have been the intention of the legislature to abolish what respondent refers to as the "civil-service system" set up by sec. 62.13, Stats., and that the purpose not to abolish this is found in sec. 64.11 (3), which, after providing that the city manager shall have the power to appoint all heads of departments, subordinates, city officials, and all city employees, and remove them at any time their services or the conduct of their offices becomes unsatisfactory to him, contains a further proviso that the subsection shall not be construed as depriving the board of fire and police commissioners of any city of all the powers conferred by sec. 62.13. It is further contended that the power of recommendation is an administrative power capable of being exercised by the city manager; that the ordinance

expressly assigned this power to him; and that by so doing, the ordinance, although it in terms purported to abolish the board of fire and police commissioners, in fact amounted to a reorganization of the board and substitution of the city manager for the board with its functions otherwise undisturbed.

These contentions present questions of some difficulty. It is plain from an examination of ch. 64, Stats., that its purpose is to concentrate municipal power rather than to diffuse it, and that it was the intent of the legislature to separate, as far as practical, executive and administrative powers on the one hand from legislative powers on the other. The administrative and executive powers were to be vested in the city manager, and the legislative powers in the council. True, the city manager had several powers which might be designated as legislative, including that of recommending legislation, and the city council had several powers which might be designated as executive or administrative, notably the right to appoint a city manager, but these exceptions do not militate against the main purpose of the act. In furtherance of this scheme, sec. 64.11, Stats., provides in substance that the manager shall be the chief executive officer of the city and possess and exercise all the executive and general administrative powers imposed and conferred by general law or special charter upon the mayor and common council and the various boards, commissions, and officers theretofore a part of city government. The city manager is given the complete power to appoint all heads of departments and all subordinate city officials and city employees, their term to be during good behavior, and with the power in him to remove them when their services or conduct becomes unsatisfactory to him. The law contains the admonition that all appointments shall be on the basis of merit and ability only. Somewhat inconsistently with the purposes of the act, it is provided in

sec. 64.10 (2) that all administrative boards and commissions existing prior to the organization shall continue unless altered or abolished by the council. Thus, it is possible under the city-manager plan and in spite of the provisions of sec. 64.11 for the city manager not to have all of the executive and administrative powers of these boards. It is evident that he does not have them unless the boards are abolished by the council. It is plain that when they are abolished, their powers, not by virtue of any assignment on the part of the council but by virtue of the provisions of sec. 64.11, become those of the city manager. Sec. 62.13 dealing with police and fire departments in cities provides in substance for a board of police and fire commissioners to be appointed by the mayor; that chiefs of police and fire departments shall be appointed by this board and hold their office during good behavior subject to suspension or removal for cause; and that the chief shall appoint subordinates from an eligible list "provided by examination and approval by the board" and kept on file. It further provides for the right on the part of the members of the police and fire departments to a hearing in the event charges are made against them and prescribes the procedure by which such hearings shall be held. It requires findings and determinations upon each such hearing. It provides further for an appeal to the circuit court by a person suspended, reduced, or removed. The procedure to be adopted when it becomes necessary for purposes of economy to reduce the number of subordinates is prescribed. The board is given power to organize and supervise the fire and police departments; contract for and purchase necessary apparatus and equipment; and audit all bills, claims, and expenses of these departments. There follows sub. (7), which provides that the salaries of the chiefs and subordinates shall be fixed by the council, but that when salaries are so fixed they may be increased but "not decreased by the council without a previous recommendation

of the board." The section makes provisions for rest days for members of the department and for the police and firemen's pension fund. A vigorous argument is made to the effect that it cannot have been the purpose of the legislature in enacting ch. 64, Stats., to abolish what respondent calls this civil-service scheme as applied to police and fire departments. While we discover no intention to abolish provisions for police and fire pensions in any event, or to disturb in any way the provisions of sec. 62.13, Stats., unless a particular city has elected to abolish the police and fire commissioners, it seems an inescapable conclusion that where the police and fire commissioners are expressly abolished by the council and their powers and duties cast upon the city manager, several subsections of sec. 62.13 become inoperative in that particular city. By the express terms of sec. 64.11 the city manager is given the power to appoint all heads of departments, all subordinates, city officials, and all employees, and to remove such appointees at any time their services or the conduct of their offices becomes unsatisfactory to him. This unqualified power in the city manager to hire and fire is one of the principal attributes of a city-manager plan of city government. The theory is that he himself is to be appointed on merit only, and he is to have full control of the city and full responsibility corresponding with that control. This necessarily would make inapplicable to him after abolition of the police and fire commissioners requirements of sec. 62.13 (4) (a)'that the chiefs appoint subordinates subject to approval by the board. It is clear to us that he would supplant the chiefs so far as this appointive power is concerned. It is also clear that he is not required to make his appointments from any eligible list, or to conduct any hearing to establish a cause for dismissal.

It is urged that the proviso in sub. (3) of sec. 64.11, Stats., to the effect that this subsection shall not be construed as depriving the board of fire and police commissioners of

any city of all the powers conferred by sec. 62.13 necessarily modifies this conclusion. We cannot assent to this contention. We have heretofore stated that the retention of administrative boards is inconsistent with the vesting in the city manager of full administrative and executive powers as well as his power of appointment. In view of the fact that sec. 64.10 preserved these administrative boards in the absence of an ordinance abolishing them, it was necessary to preserve the powers of the board of police and fire commissioners and the system of appointments prescribed in sec. 62.13 in all cases where there had been no abolition of the board. In cases where the board was abolished, the city manager was given full powers of appointment, and all portions of sec. 62.13 inconsistent with these powers are necessarily inoperative. In this case the ordinance did abolish the board of fire and police commissioners and did expressly assign its powers and duties to the city manager. On the part of the respondent it is claimed that this assignment of its powers to the city manager operated to cut down the express abolition to a mere alteration or reorganization, but we regard the assignment as a completely superfluous act. There is no reason to suppose that the council did not mean to do precisely what the ordinance said—abolish the police and fire commissioners. Having abolished the commission, its powers are distributed not in accordance with the intent of the council but as the legislature has provided. The administrative powers of such a board go to the city manager by the terms of sec. 64.11 (1). That is all that did pass to him, and it was not the purpose of the legislature that any legislative or *quasi*-legislative powers such as those involved in recommending decreases should go to the city manager. The power to recommend a decrease is certainly a legislative power, when the recommendation is made a condition precedent to legislative action by the council. It is as much so as

a power to veto. The purpose of vesting this power in the police and fire commissioners was to set up a check upon the power of the council and to prevent the latter from interfering with the discipline of departments by reducing the pay of firemen and policemen. The retention of this power is inconsistent with the basic theory of the city-manager plan, which is to abolish the elaborate system of checks and balances theretofore existing in the city government, to turn over the legislative powers to the city council as heretofore, and to turn over the executive and administrative powers to a hired manager. It is difficult to suppose that the legislature intended to preserve, as a condition for legislation decreasing the salaries of city employees, the recommendation heretofore exercised by a board of five citizens appointed for definite terms and not removable at the pleasure of the mayor and council after the administrative powers of such board had been turned over to a hired city manager removable by the council at any time that his conduct of the city administration became unsatisfactory to it. It is our conclusion that the city council's power to decrease salaries was not conditioned upon a previous recommendation by the city manager and that the resolutions are not illegal or void, as claimed by plaintiff.

The defendant further contends that plaintiff has waived the illegality of the resolution decreasing his pay by failing to protest and that for the same reason he is estopped to assert this illegality. In view of our conclusion that the resolution was not irregular or void, this contention has no materiality and need not be considered.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.